[Cite as *Harrigan v. Harrigan*, 2021-Ohio-3372.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

|                        |     |                                                              |
| ---------------------- | --- | ------------------------------------------------------------ |
| BETH M. HARRIGAN       | :   |                                                              |
|                        | :   | Appellate Case No. 2021-CA-16                                |
| Appellant              | :   |                                                              |
|                        | :   | Trial Court Case No. 2017-DR-118                             |
| v.                     | :   |                                                              |
|                        | :   | (Appeal from Common Pleas Court –                            |
| JOSEPH HARRIGAN        | :   | Domestic Relations Division)                                 |
|                        | :   |                                                              |
| Appellee               | :   |                                                              |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of September, 2021.

. . . . . . . . . .

RONALD C. TOMPKINS, Atty. Reg. No. 0030007, P.O. Box 313, 121 South Main Street, Urbana, Ohio 43078
  Attorney for Appellant

VALERIE JUERGENS WILT, Atty. Reg. No. 0040413, 333 North Limestone Street, 2020A, Springfield, Ohio 45503
  Attorney for Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Beth M. Harrigan appeals from the trial court's judgment entry sustaining a motion filed by appellee Joseph Harrigan, her former husband, to terminate his spousal-support obligation.

{¶ 2} In her sole assignment of error, Beth challenges the trial court's decision as an abuse of discretion.[1]

{¶ 3} The record reflects that the trial court terminated the parties' 34-year marriage through a decree of dissolution filed in July 2017. As relevant here, the decree incorporated a separation agreement that obligated Joseph to pay $4,750 per month in spousal support for up to nine years. The trial court retained jurisdiction over the duration and amount of support based on the parties' agreement that they were "near retirement age and that there might need to be adjustments accordingly." The separation agreement also granted the parties joint ownership of the marital residence as tenants in common. However, it granted Joseph the "sole and exclusive" right to reside in the home, while giving Beth a right to grow crops on the land and to keep property there. Finally, the agreement provided that the parties equally would split the monthly $2,694 mortgage payment.

{¶ 4} On February 11, 2020, Joseph moved to modify or terminate spousal support. Following a hearing, the trial court filed an April 7, 2021 judgment entry sustaining

---

[1] For purposes of clarity, we will refer to the parties by their first names.

Joseph's motion and terminating spousal support.[2] The trial court noted that it had retained jurisdiction over support due to anticipated retirement. The trial court then found that Joseph's health was "extremely poor," that it had "deteriorated very quickly," and that it had contributed to his decision to retire earlier than expected. The trial court found that as a result of his retirement and poor health, Joseph experienced "a substantial decrease in his wages, salary, and bonus, and a loss of employer paid health insurance." As for Beth, the trial court found that she was able to work and that her living expenses were lower than during the marriage. After considering the evidence, the trial court found a substantial change in circumstances due to Joseph's poor health and medical expenses. The trial court also observed that "the parties voluntarily entered into an agreement pursuant to their Separation Agreement for this Court to be able to modify spousal support due to retirement." The trial court found the existing spousal support order "no longer reasonable and appropriate." It terminated Joseph's support obligation effective February 27, 2020.

{¶ 5} On appeal, Beth contends the trial court's termination of spousal support constituted an abuse of discretion for three reasons. First, she asserts that Joseph's income was higher in the year of his motion than it was in the year of his retirement. That being so, she claims the trial court erred in finding a substantial change in circumstances. Second, she argues that the trial court should have imputed income to Joseph. Third, she maintains that the trial court should have considered lowering Joseph's spousal support

---

[2] The lengthy delay between the motion and the trial court's judgment was due in part to the fact that the hearing occurred on four days over a period of months. We note too that the hearing and the trial court's ruling resolved contempt motions that are not at issue on appeal.

obligation but not terminating it.

{¶ 6} Upon review, we find Beth's assignment of error to be unpersuasive. As she notes, Joseph bore the burden to prove a "change in circumstances" to modify or terminate spousal support. R.C. 3108.18(E). Such a change must be "substantial," making the existing support order "no longer reasonable and appropriate." R.C. 3108.18(F)(1)(a). It also must be one that "was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable." R.C. 3108.18(F)(1)(b). Sufficient changes may include "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances[.]" R.C. 3108.18(F)(1).

{¶ 7} Beth contends Joseph failed to establish a financial change in circumstances because his income was higher in 2020, the year he filed his motion, than it was in 2019, the year he retired. This argument overlooks the reason Joseph's income increased after his retirement.

{¶ 8} The record reflects that Joseph was a long-time employee of Michael Farms, a farming business owned by members of Beth's family. In 2017, the year of the parties' dissolution, Joseph's gross income was $207,061. In 2018, his gross income was $204,000. In 2019, the year Joseph retired,[3] his gross income was $172,889. And in 2020, the year Joseph moved to modify or terminate spousal support, his gross income was expected to be approximately $211,000. (Tr. Vol. III at 195-199, 211-212.) At first

---

[3] Joseph's last day of work was December 12, 2019. (Tr. Vol. III at 201.) His "official" retirement date, however, was not until January 10, 2020. (*Id.* at 200.) Nevertheless, for purposes of Beth's argument, we will accept that he effectively retired at the end of 2019.

glance, these figures support Beth's claim that no financial reason existed to terminate Joseph's support obligation. She fails to mention, however, that Joseph's 2020 income remained high only because he was withdrawing $15,000 per month from a retirement account, in part so he could afford his support obligation. (*Id.* at 210, 212.) The account was an IRA rollover of Joseph's 401(k) from Michael Farms. (Tr. Vol. II at 96.) As of May 31, 2020, the IRA had a balance of $464,257.91. (*Id.*) Joseph estimated that if he kept withdrawing $15,000 per month, the IRA, which represented the bulk of his financial assets, would "run out of money" within a few years. (Tr. Vol. III at 212, 239.) Excluding the $15,000 withdrawals, Joseph's only other income was $340.67 per month from an annuity and $2,340 per month from Social Security. (*Id.* at 210-211.) In short, Joseph was drawing heavily from the IRA to offset his loss of salary and to meet his spousal support obligation.

{¶ 9} With regard to the parties' retirement accounts and other financial assets, we note too that Joseph's monetary assets totaled about $580,000 whereas Beth's totaled about $1,260,000 as of June 2020. (Tr. Vol. IV at 313, 316.) In addition to these amounts, Joseph and Beth each may have had a $150,000 interest in a profit-sharing plan from Michael Farms. (*Id.* at 313-314.) The parties also each still owned a one-half interest in the marital residence, and Beth, who was 62 years old at the time of the hearing, owned a condominium in Columbus. (Tr. Vol. I at 58.) When discussing the $1,260,000 she had in retirement accounts and savings, Beth explained that it was her own retirement money, that she was not yet "retirement age," and that she would not have "enough" if she started spending it now. (*Id.* at 57.) But she expected Joseph, who turned 64 years old in October 2020, to continue paying the same level of spousal support by making withdrawals from

his IRA account, which consisted of his share of funds that had been divided equally in the dissolution.[4] (Tr. Vol. IV at 308, 312.)

{¶ 10} Beth also argues that Joseph's retirement from Michael Farms was voluntary and that he retired in part to avoid spousal support. She argues that such a voluntary reduction in income does not constitute a substantial change in circumstances warranting modification or termination of support. Beth contends the trial court should have imputed income to him and continued his spousal support obligation.

{¶ 11} Once again, we find Beth's argument to be unpersuasive. Joseph worked at Michael Farms from 1984 through 2019. (Tr. Vol. III at 200.) He testified that he had planned to continue working until age 65. (Tr. Vol. II at 157.) Joseph cited two reasons for retiring at the end of 2019, a little less than two years before reaching age 65. His declining health was the "major" reason. According to Joseph, he started getting progressively sicker starting in the fall of 2019. (*Id.* at 83.) He was experiencing "bad stomach problems," vomiting, diarrhea, headaches, and sleeplessness. (*Id.*) In her own testimony, Beth acknowledged that Joseph's health problems "got severely worse a couple years after the dissolution." (Tr. Vol. I at 55.) Although she attributed his declining health to "lifestyle choices," she nevertheless admitted his poor physical condition. (*Id.*) In a March 5, 2020 affidavit, she stated that Joseph's "health is poor." The trial court also confirmed Joseph's "poor health claims" based on its observation of him in court. (April 7,

---

[4] We note too that Beth was living rent-free in a house owned by Michael Farms. The company also paid the property taxes, insurance, utilities, and the cost of major repairs. (Tr. Vol. I at 65-66.) Her obligation to pay one-half of the $2,694 per month mortgage on the marital residence was set to expire in less than one year, and her cost of health insurance was $400 per month less than it had been at the time of the dissolution. (*Id.* at 58, 65-66; Tr. Vol. IV at 309.)

2021 entry at 2.) Beth argued at the hearing that some of Joseph's medical conditions were not diagnosed until after his retirement. The fact remains, however, that after the dissolution Joseph experienced an aortic aneurism, pulmonary embolisms on both lungs, gastrointestinal issues, liver lesions, deep vein thrombosis, heart strain, chest pains, and trouble breathing. (Tr. Vol. I at 54-57; Vol. IV at 291-295.) Although some of these conditions were not diagnosed until after his retirement, they certainly may have affected him earlier.

{¶ 12} A secondary reason cited by Joseph for retiring early involved the work environment at Michael Farms after the parties' dissolution. (Tr. Vol. II at 84). Joseph explained that he worked for the company, which was owned by Beth's brothers, for about 35 years, the last three of which were after the dissolution. (*Id.*) Joseph noticed a change in the way Beth's brothers treated him after he and Beth separated. He no longer was treated as family, and he felt like Beth's brothers had lost respect for him and treated him more harshly. (*Id.* at 85.) Their "daily approach toward [him] was a lot different." (*Id.* at 86.) According to Joseph, this change in the work environment contributed to his decision to retire earlier than planned.

{¶ 13} In our view, the record contains competent, credible evidence to support a finding that Joseph's declining health in particular justified his decision to retire less than two years earlier than he had planned. We note too that the parties' own separation agreement recognized that they were "near retirement age" at the time of the dissolution and that "adjustments" might need to be made to Joseph's support obligation. Notably, nothing in the separation agreement obligated Joseph to work until reaching "full" Social Security retirement age. Beth conceded that Joseph in fact had reached "retirement age"

to obtain a reduced Social Security benefit when he left his job at Michael Farms. (Tr. Vol. I at 52.) Given that the parties' agreement did not define "retirement age" and that Joseph had reached the age necessary to receive a Social Security retirement benefit, he at least arguably was entitled to retire without relying on underlying health conditions. In any event, the record fully supports the trial court's determination that his declining health justified his retirement at age 63. That being so, the trial court did not err in failing to find Joseph voluntarily unemployed. It follows that the trial court also did not err in failing to impute income to him on the basis that his early retirement was a ruse to avoid his spousal support obligation.

{¶ 14} Finally, we reject Beth's argument that the trial court at most should have reduced Joseph's support obligation but not terminated it. Based on our review of the record, the evidence supported the trial court's decision to terminate spousal support. As a result, the trial court had no obligation to address Joseph's alternative request for his support obligation to be reduced.

{¶ 15} Beth's assignment of error is overruled. The judgment of the Champaign County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Ronald C. Tompkins
Valerie Juergens Wilt
Hon. Lori Reisinger